# Chalker *versus* Ives.

1. The Bounty Act of March 25th 1864, intended to leave the mode of collecting taxes laid under it, to the laws regulating the collection of taxes by the authorities imposing them.

2. When the tax is laid by the supervisors, the mode for collecting township taxes is that to be used for collecting bounty tax.

3. The tax in such case is to be collected under a warrant from a justice of the peace ; even where it is collected by the supervisors themselves.

4. A warrant of collection issued by the supervisors is unauthorized and affords no protection to the collector.

5. Before an act is to be taken to operate retrospectively to bar an action for a prior injury, it must clearly appear that it embraces the very case.

March 14th 1867.   Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ.   READ, J., absent.

Error to the Court of Common Pleas of *Susquehanna county*.

This was an action of trespass commenced November 3d 1865, before a justice of the peace, by William H. Ives, against Jacob B. Chalker, Henry W. Howard, and Charles Stanford for taking a cow belonging to the plaintiff.

Howard, one of the defendants and others, were supervisors of Liberty township in Susquehanna county in 1864; on the 22d of October 1864, they offered a bounty of $300 to volunteers to be credited to the township, and levied a tax to pay the bounty. On the 31st of November a duplicate of the tax was made, and a

5 P. F. SMITH—6

[Chalker *v.* Ives.]

warrant issued by Howard and another of the supervisors to Stanford one of the defendants to collect it. On the 21st of April 1865, Chalker, the other defendant and one Marsh, two of the then newly elected supervisors directed Stanford to proceed and collect the tax. Ives, the plaintiff was charged on the duplicate with $23.50 tax. He refused to pay it, and the collector seized and sold the cow, for taking which the suit is brought.

The justice having given judgment for the plaintiff, the defendants appealed to the Common Pleas.

The tax was assessed by virtue of the Act of March 25th 1864, " relating to the payment of bounties to volunteers," Pamph. L. 85.

The 3d section provides that bounty taxes " shall be assessed and collected as other county, city, ward, borough, or *township* taxes are assessed, levied and collected."

The 7th section authorizes county commissioners, supervisors and corporate authorities of cities, wards and boroughs to borrow money, and levy and assess taxes for bounty purposes; and provides that said taxes " shall be collected as county, city, ward and borough taxes are now levied and collected." This section omits the word " township."

On the 4th of April 1866, an act was passed (Pamph. L. 458) providing " That all bounty taxes levied, or to be levied, in the county of Susquehanna, under the provisions of any Act of Assembly of this Commonwealth, may be collected, either as county, borough or township taxes are by law collectable, according to the warrant of the corporate authorities, levying the same, to the collector thereof; and the collection of any taxes heretofore, in accordance with any warrant issued by any of said authorities, is legalized."

The case was tried August 25th 1866, before Streeter, P. J., who charged the jury that the plaintiff was entitled to recover the value of the cow, upon the ground that the warrant was no protection to the collector in levying and selling for non-payment of the tax.

The verdict was for the plaintiff for $47.

The charge of the court was assigned for error.

*W. H. Jessup,* for plaintiff in error, cited Reisel *v.* Tell Saving Fund, 3 Wright 145 ; Packer *v.* Sunb. and Erie Railroad Co., 7 Harris 211 ; Acts of March 25th 1864, April 4th 1866, *supra;* Satterlee *v.* Matthewson, 16 S. & R. 169 ; Kenyon *v.* Stewart, 8 Wright 192 ; Bagg's Appeal, 7 Id. 516 ; Gault's Appeal, 9 Casey 94 ; Schenley *v.* Commonwealth, 12 Id. 29 ; Hepburn *v.* Curts, 7 Watts 300.

*B. S. Bentley,* for defendant in error, cited Stephens *v.*

[Chalker v. Ives.]

Wilkins, 6 Barr 260; Dewart v. Purdy, 5 Casey 113; Snyder v. Bull, 5 Harris 58; Greenough v. Greenough, 1 Jones 495–6; Dale v. Medcalf, 9 Barr 109–111.

The opinion of the court was delivered, March 21st 1867, by

Agnew, J.—We agree with the learned judge in the court below that the Bounty Act of 25th of March 1864, intended to leave the mode of collecting the taxes laid under it to the laws regulating the collection of taxes by the authorities imposing them. It was not thought proper to enact any specific mode, but it was supposed that the mode familiar to the authority levying the tax would be that most easy and most likely to be recognised by the tax-payers themselves. This tax being laid by the supervisors of the township, the mode pursued by them in collecting township taxes is the one the law intended they should pursue in collecting the bounty tax.

Omitting the word township, in the 7th section, is an obvious error, either by inadvertence or in transcribing, as is plainly shown by the context both before and after the clause in which it should appear. Indeed the whole scope of the act in various sections, and the supplemental acts, require this construction. The tax in this instance was, therefore, to be collected according to the law regulating the collection of township taxes laid by supervisors. This required that the tax of a defaulting tax-payer should be collected under a warrant from a justice of the peace by a sale of his goods and chattels: Act of April 15th 1834, p. 35. And even where the supervisors themselves collect the tax, the warrant required by the 35th section of the Act of 1834 must be issued by the justice to the supervisors. Act of 29th March 1860, p. 1; Purd. 1861, p. 941, §§ 63, 67, 69. The warrant issued in this case to the collector by the supervisors themselves, directing him to levy and sell the goods, and for want thereof to take the body of the delinquent, was without authority, and no protection to the collector.

The plaintiff in error relies on an act passed the 4th of April 1866, relating to the manner of collecting bounty taxes in the county of Susquehanna, as curing the irregularity of the warrant in question. It might be sufficient to say that this is a special law, and does not seem to have been brought to the notice of the court below; no point was made to the court, and it is not mentioned in their charge, and it seems not exactly fair to the learned judge to convict him of error because he was not aware of a law passed but a few months before, applicable to only a single county. But not resting a decision on this ground, the Act of 1866 is too obscure in respect to the character of the warrant to give it a retroactive effect. This action was pending by appeal from a justice of the peace, and at issue when the act was passed. It

[Chalker *v*. Ives.]

must clearly appear that the act embraces this very case before we can suppose the legislature intended to legislate retrospectively to bar an action for a prior injury by levy under a void warrant.

This law provides, " That all bounty taxes levied or to be levied in the county of Susquehanna, under the provisions of any Act of Assembly, may be collected either as county, borough or township taxes are by law collectable, according to the warrant of the corporate authority levying the same, to the collector thereof, and the collection of any taxes heretofore in accordance with any warrant issued by any of said authorities is legalized." Thus what the act legalizes in terms is the collection of any taxes heretofore in accordance with any warrant issued by any of said authorities. But it does not clearly validate any warrant whatever however illegal it may be. Its purpose seems rather to validate the collection of taxes by any one of the specified authorities than to legalize an illegal act of the particular authority in its mode of proceeding. There seems to have been good reason for such a purpose. Former laws had authorized taxes to be levied by county, city, ward, borough, school, township and election officers. The modes of collection of taxes by these different authorities are dissimilar. One cannot authorize another to collect, while some (the election officers) have no mode of collection by law, and their respective territorial limits are not always precisely identical, as where two school or election districts, or two boroughs, are within one township. The legislature might well legalize the collection of bounty taxes thus variously imposed, by any one of the authorities prescribed in the Act of 1866, where there has been a confusion or even conflict among the authorities authorized to levy and those to collect tax, without intending to protect any one of them in a proceeding entirely illegal and unknown to the law regulating the mode of collection by that particular authority. When the legislature legalized a collection in accordance with any warrant issued by any of said authorities, we must presume it meant in conformity to the law of collection by that authority, and not an illegal warrant. Even supervisors have the right to issue warrants to demand and receive taxes: Act of 15th April 1834, pp. 33, 39 ; Purd. p. 94, §§ 61, 67. A collection in accordance therewith doubtless would be validated, although it might be doubted whether they were the proper local authorities to collect the tax. But this would scarcely justify supervisors in issuing a warrant unknown to the law of this mode of collection, by authorizing the collector to seize the goods or take the body of the delinquent tax-payer.

Therefore, without giving to the Act of 1866 any particular construction which might apply it to cases not before us, we think its language does not sufficiently embrace a collection of taxes

[Chalker *v.* Ives.]

under a void warrant to enable us to say it shall act retrospectively in this case.        The judgment is therefore affirmed.

STRONG, J., dissents from so much of the opinion as relates to the Act of April 4th 1866.